**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN H. COTTRELL, Individually and on Behalf of All Others Similarly Situated, | ) CIVIL ACTION NO. |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GROUPON, INC., ANDREW D. MASON, JASON | ) |
| E. CHILD, JOSEPH M. DEL PRETO, ERIC P. | ) |
| LEFKOFSKY, THEODORE J. LEONSIS, PETER | ) |
| J. NARRIS, KEVIN J. EFRUSY, MELLODY | ) |
| HOBSON, BRADLEY A. KEYWELL, HOWARD | ) |
| SCHULTZ, MORGAN STANLEY & CO. LLC, | ) **JURY TRIAL DEMANDED** |
| GOLDMAN, SACHS & CO., CREDIT SUISSE | ) |
| SECURITIES (USA) LLC, ALLEN & COMPANY | ) |
| LLC, MERRILL LYNCH, PIERCE, FENNER & | ) |
| SMITH INCORPORATED, BARCLAYS | ) |
| CAPITAL INC., CITIGROUP GLOBAL | ) |
| MARKETS INC., DEUTSCHE BANK | ) |
| SECURITIES INC., J.P. MORGAN SECURITIES | ) |
| LLC, WELLS FARGO SECURITIES, LLC, | ) |
| WILLIAM BLAIR & COMPANY L.L.C., LOOP | ) |
| CAPITAL MARKETS, INC., RBC CAPITAL | ) |
| MARKETS LLC and THE WILLIAMS CAPITAL | ) |
| GROUP, L.P., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CLASS ACTION COMPLAINT**
**FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

## I.    INTRODUCTION

1.      Groupon, Inc. ("Groupon" or the "Company") is an e-commerce marketplace that connects local merchants to consumers by offering discounts on products and services. Launched in November 2008, the Company features daily e-mail deals in hundreds of cities across 48 countries.   Since its launch, the Company quickly expanded and now has roughly 10,000 employees located across North America and regional offices in Europe, Latin America, and Asia.  In November 2011, Groupon went public through an initial public offering.

2.      This action is brought against Groupon, certain of its officers and directors, and the underwriters for violations of the federal securities laws.  The complaint alleges that during the Class Period, Groupon issued materially false and misleading statements regarding its financial results and its internal financial controls.

3.      On March 30, 2012, only a month after Groupon had reported its earnings, the Company issued a press release announcing the revision of its fourth quarter and full year 2011 financial results.  This resulted in a reduction in fourth quarter revenues by $14.3 million, and an increase in operating expenses that reduced operating income by $30 million, net income by $22.6 million, and earnings per share by $0.04.  In addition, on the same day, Groupon disclosed a "material weakness in its internal controls."

4.      On this news, the price of Groupon stock fell $3.10 per share, or approximately 16.9%, to close at $15.28 per share on the next trading day, April 2, 2012, on extremely high trading volume.

## II.   NATURE OF THE ACTION

5.      By and through its undersigned counsel, Plaintiff John H. Cottrell ("Plaintiff")
alleges the following against Groupon, certain of the Company's officers and directors, and
certain other entities that facilitated the Company's Stock Offering.

6.      Plaintiff makes these allegations upon personal knowledge as to those allegations
concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which
included, without limitation:  (a) review and analysis of public filings made by Groupon and
other related parties and non-parties with the U.S. Securities and Exchange Commission
("SEC"); (b) review and analysis of press releases and other publications disseminated by certain
Defendants and other related non-parties; (c) review of news articles, shareholder
communications, and postings on Groupon's website concerning the Company's public
statements; and (d) review of other publicly available information concerning Groupon, the other
Defendants and related non-parties.

7.      This is a federal securities class action against Groupon and certain of its officers
and/or directors for violations of the federal securities laws.  Plaintiff brings this action on behalf
of all persons or entities that purchased shares of Groupon's common stock between November
4, 2011 through March 30, 2012, inclusive (the "Class Period"), seeking to pursue remedies
under the Securities Exchange Act of 1934 (the "Exchange Act").  The Exchange Act claims
allege that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock
price.  As a result of the fraud described below, the Company has lost a substantial portion of its
value.

8.      This action is also brought on behalf of all persons or entities who purchased
Groupon's common stock in connection with the Company's November 4, 2011 initial public

offering (the "IPO" or the "Stock Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"). Under the Securities Act, Defendants are strictly liable for the material misstatements in the Offering Documents (as defined below) for this public stock offering, and these claims specifically exclude any allegations of knowledge or scienter. The Securities Act claims also expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

9.     The Complaint alleges that, in Groupon's Offering Documents and throughout the Class Period, Defendants failed to disclose material adverse facts about the Company's financial well-being and future prospects. As a result of Defendants' wrongful actions, false and misleading statements and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the other Class members have suffered significant losses and damages.

III.     **JURISDICTION AND VENUE**

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a) and pendent common law claims, as well as §§11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k and 77o.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1307, Section 27 of the Exchange Act, 15 U.S.C. §78aa, and Section 22 of the Securities Act (15 U.S.C. §77v).

12.     The Court has personal jurisdiction over this action because Groupon is headquartered in this District and conducts business in this District.

13.     Venue is proper in this Judicial District pursuant to §22 of the Securities Act and pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b). Many of the acts

and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains executive offices within this Judicial District, a substantial portion of the Company's business during the Class Period originated within this Judicial District, and Defendants have received substantial compensation in this Judicial District by doing business here and engaging in numerous activities that had an effect in this Judicial District.

14.     In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## IV.  CLAIMS UNDER THE SECURITIES ACT

### A.  PARTIES

#### i.  Plaintiff

15.     Plaintiff John H. Cottrell, as set forth in the accompanying certification and incorporated by reference herein, purchased the publicly-traded securities of Groupon pursuant to the Company's IPO at artificially inflated prices during the Class Period and has been damaged thereby.

#### ii.  Securities Act Defendants

16.     The Securities Act claims are asserted the issuer of stock issued in the IPO, against all signatories to the Offering Documents, all members of the Company's Board of Directors at the time of the filing of the materially untrue Offering Documents, the banks that underwrote the Stock Offering (defined below as the "Underwriter Defendants"), and those officers who were controlling persons of Groupon. Each of these Defendants is statutorily liable

under Sections 11, 12 and/or 15 of the Securities Act for the materially untrue statements contained in and incorporated in Groupon's Offering Documents.

### (a)    The Company

17.    Defendant Groupon is a corporation incorporated under the laws of Delaware with headquarters located in Illinois. During the Class Period, Groupon maintained executive offices at 600 W. Chicago Avenue, Suite 620, Chicago, Illinois 60654. Groupon was the issuer of the stocks offered pursuant to the Stock Offering.

### (b)    The Officer and Director Defendants

18.    Defendant Andrew D. Mason ("Mason") co-founded the Company and serves as Chief Executive Officer ("CEO") and a director of Groupon. Defendant Mason signed or authorized the signing of the false and misleading Registration Statement.

19.    Defendant Jason E. Child ("Child") serves as Chief Financial Officer ("CFO") of Groupon. Defendant Child signed or authorized the signing of the false and misleading Registration Statement.

20.    Defendant Joseph M. Del Preto ("Del Preto") serves as Chief Accounting Officer of Groupon. Defendant Del Preto signed or authorized the signing of the false and misleading Registration Statement.

21.    Defendant Eric P. Lefkofsky ("Lefkofsky") co-founded the Company and serves as Executive Chairman of the Board. Defendant Lefkofsky signed or authorized the signing of the false and misleading Registration Statement.

22.    Defendant Theodore J. Leonsis ("Leonsis") serves as a director of Groupon. Defendant Leonsis signed or authorized the signing of the false and misleading Registration Statement.

23.     Defendant Peter J. Barris ("Barris") serves as a director of Groupon. Defendant Barris signed or authorized the signing of the false and misleading Registration Statement.

24.     Defendant Kevin J. Efrusy ("Efrusy") serves as a director of Groupon. Defendant Efrusy signed or authorized the signing of the false and misleading Registration Statement.

25.     Defendant Mellody Hobson ("Hobson") serves as a director of Groupon. Defendant Hobson signed or authorized the signing of the false and misleading Registration Statement.

26.     Defendant Bradley A. Keywell ("Keywell") co-founded the Company and serves as a director of Groupon. Defendant Keywell signed or authorized the signing of the false and misleading Registration Statement.

27.     Defendant Howard Schultz ("Schultz") serves as a director of Groupon. Defendant Schultz signed or authorized the signing of the false and misleading Registration Statement.

28.     The Defendants listed in section IV(A)(ii)(b) above are sometimes referred to as the "Officer and Director Defendants."

### (c)     The Underwriter Defendants

29.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") acted as lead book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

30.     Defendant Goldman, Sachs & Co. ("Goldman") acted as lead book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

31.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") acted as lead book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

32.     Defendant Allen & Company LLC ("Allen & Company") acted as book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

33.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") acted as book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

34.     Defendant Barclays Capital Inc. ("Barclays") acted as book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

35.     Defendant Citigroup Global Markets, Inc. ("Citigroup") acted as book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

36.     Defendant Deutsche Bank Securities Inc. ("Deutsche") acted as book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

37.     Defendant J.P. Morgan Securities LLC ("JP Morgan") acted as bookrunning manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

38.     Defendant Wells Fargo Securities, LLC ("Wells Fargo") acted as book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

39.     Defendant William Blair & Company L.L.C. ("William Blair") acted as book-running manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

40.     Defendant Loop Capital Markets, Inc. ("Loop Capital") acted as co-manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

41.     Defendant RBC Capital Markets LLC ("RBC") acted as co-manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

42.     Defendant The Williams Capital Group, L.P. ("Williams") acted as co-manager and underwriter for Groupon's IPO, helping to draft and disseminate the Offering Documents.

43.     The Defendants listed in Section IV(A)(ii)(c) above are sometimes referred to as the "Underwriter Defendants." The Company, the Officer and Director Defendants, and the Underwriter Defendants are sometimes referred to as the "Securities Act Defendants."

**B.     CLAIMS AGAINST THE SECURITIES ACT DEFENDANTS**

**i.     Nature of Plaintiff's Claims**

44.     In the allegations and claims set forth in this complaint, Plaintiff asserts a series of strict liability and negligence claims based on the Securities Act on behalf of the Class. Plaintiff's Securities Act claims are not based on any allegations of knowing or reckless misconduct on behalf of the Defendants named in the Securities Act claims. Plaintiff's Securities Act claims do not allege, and do not sound in, fraud, and Plaintiff specifically disclaims any reference to or reliance upon allegations of fraud in these non-fraud claims under the Securities Act.

45.     This action was brought within one year after the discovery of the untrue statements and omissions (and within one year after such discovery should have been made in the exercise of reasonable diligence), and within three years after the Offering described herein.

### ii.     Background of Groupon

#### (a)     The IPO

46.     On November 3, 2011, Groupon announced the initial public offering of 35 million shares of its Class A common stock at a price of $20 per share (the "Stock Offering" or the "Offering").  In addition, Groupon had granted the underwriters a 30-day option to purchase up to an additional 5.25 million shares of Class A common stock to cover over-allotments, if any. The total price to the public of the Offering was $700,000,000, with a net proceed of $658,000,000.

47.     Subsequent to the successful offering of the IPO, Groupon's stock traded at artificially inflated prices, reaching a peak intraday price of $31.14 on November 4, 2011 and an all-time high adjusted closing price of $26.19 per share on November 18, 2011.

48.     Regarding the use of the proceeds the Company received from the Stock Offering, the Prospectus stated the following:

> We estimate that our net proceeds from the sale of the Class A common stock in this offering will be approximately $478.8 million, assuming an initial public offering price of $17.00 per share, which is the midpoint of the range reflected on the cover page of this prospectus, and after deducting estimated underwriting discounts and commissions and estimated offering expenses payable by us. If the underwriters' option to purchase additional shares in this offering is exercised in full, we estimate that our net proceeds will be approximately $551.5 million, after deducting estimated underwriting discounts and commissions and estimated offering expenses payable by us. A $1.00 increase or decrease in the assumed initial public offering price of $17.00 per share would increase or decrease the net proceeds to us from the offering by approximately $28.5 million, assuming the number of shares offered by us remains the same and after deducting estimated underwriting discounts and commissions and estimated offering expenses payable by us. Similarly, each increase or decrease of one million shares in the number of

shares of Class A common stock offered by us would increase or decrease the net proceeds to us from this offering by approximately $16.2 million, assuming the assumed initial public offering price remains the same and after deducting estimated underwriting discounts and commissions and estimated offering expenses payable by us.

As of the date of this prospectus, we cannot specify with certainty all of the particular uses for the net proceeds of this offering. However, we intend to use the net proceeds from this offering for working capital and other general corporate purposes, which may include the acquisition of other businesses, products or technologies; however, we do not have any commitments for any acquisitions at this time. Based on our current cash and cash equivalents, together with cash generated from operations, we do not expect that we will utilize any of the net proceeds of this offering to fund operations, including online marketing expenses, during the next twelve months. We will have broad discretion in the way we use the net proceeds. Pending use of the net proceeds as described above, we intend to invest the net proceeds in money market funds and investment grade debt securities.

49.     Regarding Groupon's dividend policy, the Prospectus stated the following:

We declared dividends on our preferred stock in the amounts of $0.3 million, $5.6 million and $1.4 million in 2008, 2009 and 2010, respectively. We declared dividends on our common stock in the amount of $21.3 million in 2009. We did not declare any dividends on our common stock in 2008 or 2010. We currently do not anticipate paying any cash dividends on our Class A common stock or Class B common stock in the foreseeable future. Any future determination to declare cash dividends will be made at the discretion of our board of directors, subject to applicable laws and will depend on our financial condition, results of operations, capital requirements, general business conditions and other factors that our board of directors may deem relevant.

### (b)     The Offering Documents

50.     The Stock Offering was conducted pursuant to a shelf registration statement filed with the SEC on Form S-1 on June 2, 2011, along with a subsequent amendment filed on November 3, 2011(the "Registration Statement"), and a prospectus dated June 02, 2011, along with an amended prospectus dated November 01, 2011 (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

51.     The Offering Documents incorporated by reference several Groupon filings with the SEC, including, among others, the following:

      a.    Annual Report on Form 10-K for the fiscal year ended December 31, 2011, filed on March 30, 2012; and

      b.    Current Reports on Form 8-K filed on February 08, 2012, March 19, 2012 and March 30, 2012.

52.     As discussed below, the Offering Documents contained untrue statements of material fact and omitted to state material facts required to make the statements therein not misleading.

      **iii.**    **Material Misstatements And Omissions In The Offering Documents**

53.     The Offering Documents, and the document incorporated by reference therein, contained material misstatements and omissions regarding the Company's business and operations.  Specifically, the Offering Documents fail to include material adverse information concerning, among other things, the Company's risk management systems, financial and operational condition, and future business prospects.

54.     In addition, the Offering Documents incorporated by reference several of Groupon's filings with the SEC which contained materially false and misleading statements and omissions, which are discussed in greater detail below.

55.     The statements in the Offering Documents, and in filings which were incorporated by reference in the Offering Documents, were materially false and failed to disclose: (1) that Groupon's financial results were materially false and misleading in violation of Generally Accepted Accounting Principles ("GAAP"); (2) that Groupon's revenues were overstated in violation of GAAP; (3) that the Company failed to adequately disclose their exposure to likely

rates for refunds; (4) that Groupon's business was not growing to the extent represented by defendants and was not nearly as resistant to competition as suggested by defendant; (5) that the IPO Registration Statement and Prospectus concealed that Groupon was not in compliance with the laws and regulations of some of the countries in which it operated; (6) that the Company lacked adequate internal and financial controls; and (7) that the Company's statements regarding its business and operations were materially false and misleading, and lacked any reasonable basis when made.

## V.     COUNTS AGAINST DEFENDANTS RELATED TO THE STOCK OFFERING

### COUNT I
### FOR VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT
### AGAINST THE SECURITIES ACT DEFENDANTS

56.     Plaintiff incorporates the allegations contained above pertaining to the false Offering Documents.  For purposes of Counts I, II and III, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as these counts are based solely on claims of strict liability and/or negligence under the Securities Act.

57.     This Count is brought against Defendants on behalf of all persons or entities who purchased Groupon stocks issued pursuant to or traceable to the November 4, 2011 Stock Offering.  The Offering Documents for the Stock Offering were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed adequately to disclose material facts, as described above.

58.     Defendants are strictly liable for the above-noted misstatements and omissions, and for the damages that Plaintiff and the other members of the Class have sustained thereby.

Defendants are responsible for the content and dissemination of the Offering Documents, and did not conduct a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering Documents were true, without the omissions of any material facts, and were not misleading.

59.     Defendants issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in the Offering Documents, which misrepresented or failed to disclose, among other things, the facts set forth above.  By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

## COUNT II
## FOR VIOLATIONS OF SECTION 12(a)(2) OF THE SECURITIES ACT AGAINST GROUPON AND THE UNDERWRITER DEFENDANTS

60.     Plaintiff incorporates the allegations contained above pertaining to the false Offering Documents.  For purposes of Counts I, II and III, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as these counts are based solely on claims of strict liability and/or negligence under the Securities Act.

61.     This Count is brought against the Underwriter Defendants on behalf of all persons or entities who purchased Groupon stock issued pursuant to or traceable to the November 4, 2011 Stock Offering.  The Underwriter Defendants were sellers, offerors, and/or solicitors of purchasers of the stocks offered pursuant to the Offering Documents.

62.     The Offering Documents contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.   The Underwriter Defendants' actions of solicitation included

participating in the preparation and dissemination of the false and misleading Offering Documents.

63.     The Underwriter Defendants owed to the purchasers of Groupon's securities, including Plaintiff and the other members of the Class, the duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents to ensure that such statements were true, and that there were no omissions to state a material fact required to be stated in order to make the statements contained therein not misleading.   The Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the Offering Documents, as set forth above.

64.     Plaintiff and the other members of the Class purchased or otherwise acquired Groupon's securities pursuant to and/or traceable to the defective Offering Documents.  Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Documents.

65.     Plaintiff, individually and representatively, hereby offers to tender to the Securities Act Defendants those securities which Plaintiff and the other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities, together with interest thereon.  Class members who have sold their Groupon securities are entitled to rescissory damages.

66.     This action is brought within three years from the time that the securities upon which this Count is brought were sold to the public, and within one year from the time when Plaintiff discovered, or reasonably could have discovered, the facts upon which this Count is based.

## COUNT III
## FOR VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT
## AGAINST THE OFFICER AND DIRECTOR DEFENDANTS

67.     Plaintiff incorporates the allegations contained above pertaining to the false

Offering Documents.   For purposes of Counts I, II and III, Plaintiff expressly excludes and

disclaims any allegation that could be construed as alleging fraud or intentional or reckless

misconduct, as these counts are based solely on claims of strict liability and/or negligence under

the Securities Act.

68.     This Count is brought against the Officer and Director Defendants, each of whom

was a controlling person of Groupon by virtue of their position as directors and/or senior officers

of Groupon and/or by virtue of their status as a major shareholder of the Company.

69.     This Claim is brought against the Officer and Director Defendants pursuant to

Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of all persons or entities who

purchased Groupon securities issued pursuant to or traceable to the November 4, 2011 Stock

Offering.

70.     The Company is liable under Section 11 of the Securities Act as set forth in

Count I herein with respect to the Stock Offering.

71.     Each of the Officer and Director Defendants was a control person of the Company

with respect to the Stock Offering by virtue of that individual's position as a senior executive

officer and/or director of the Company.   These Defendants each had a series of direct and/or

indirect business and/or personal relationships with other directors and/or officers and/or major

shareholders of Groupon.   By reason of their positions within the Company, and/or their

securities ownership, and/or because of their positions on Groupon's Board of Directors, the

Officer and Director Defendants had the requisite power to directly or indirectly control or

influence the specific corporate policy that resulted in the unlawful acts and conduct alleged in Count I.

72.     Each of the Officer and Director Defendants was a culpable participant in the violations of Section 11 of the Securities Act alleged in Count I above, based on their having signed the Offering Documents and the filings incorporated by reference therein, and having otherwise participated in the process that allowed the Stock Offering to be successfully completed.  These Defendants, by virtue of their managerial and/or Board positions with the Company, controlled the Company, as well as the contents of the Offering Documents at the time of the Stock Offering.  Each of the Officer and Director Defendants was provided with or had unlimited access to copies of the Offering Documents, and had the ability to either prevent their issuance or cause them to be corrected.

73.     As a result, the Officer and Director Defendants are liable under Section 15 of the Securities Act for the Company's primary violation of Section 11 of the Securities Act.

74.     By virtue of the foregoing, Plaintiff and the other members of the Class who purchased or otherwise acquired the Company's securities pursuant to and/or traceable to the Stock Offering are entitled to damages against the Officer and Director Defendants.

## VI.     CLAIMS UNDER THE EXCHANGE ACT

### A.     PARTIES

#### i.     Plaintiff

75.     Plaintiff John H. Cottrell purchased Groupon common stock during the Class Period, and was damaged thereby.

ii.     **Exchange Act Defendants**

(a)     **The Company**

76.     As described above, Groupon is a Delaware corporation headquartered in Chicago, Illinois.

(b)     **The Individual Defendants**

77.     Defendant Mason co-founded the Company and serves as CEO and a director of Groupon. Defendant Mason signed or authorized the signing of the false and misleading Registration Statement.

78.     Defendant Child serves as the CFO of Groupon. Defendant Child signed or authorized the signing of the false and misleading Registration Statement.

79.     Defendant Del Preto serves as Chief Accounting Officer of Groupon. Defendant Del Preto signed or authorized the signing of the false and misleading Registration Statement.

80.     Defendant Lefkofsky co-founded the Company and serves as Executive Chairman of the Board.  Defendant Lefkofsky signed or authorized the signing of the false and misleading Registration Statement.

81.     Defendant Leonsis serves as a director of Groupon.  Defendant Leonsis signed or authorized the signing of the false and misleading Registration Statement.

82.     Defendant Barris serves as a director of Groupon. Defendant Barris signed or authorized the signing of the false and misleading Registration Statement.

83.     Defendant Efrusy serves as a director of Groupon. Defendant Efrusy signed or authorized the signing of the false and misleading Registration Statement.

84.     Defendant Hobson serves as a director of Groupon. Defendant Hobson signed or authorized the signing of the false and misleading Registration Statement.

85. Defendant Keywell co-founded the Company and serves as a director of Groupon. Defendant Keywell signed or authorized the signing of the false and misleading Registration Statement.

86. Defendant Schultz serves as a director of Groupon. Defendant Schultz signed or authorized the signing of the false and misleading Registration Statement.

87. For purposes of Plaintiff's Exchange Act claims, Defendants Mason, Child, Del Preto, Lefkofsky, Leonsis, Barris, Efrusy, Hobson, Keywell and Schultz are referred to herein as the "Individual Defendants." The Company and the Individual Defendants are referred to as the "Exchange Act Defendants."

88. The Securities Act Defendants and the Exchange Act Defendants are collectively referred to as "Defendants."

89. During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Groupon, were privy to confidential, proprietary and material adverse non-public information concerning Groupon, its operations, finances, financial condition and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

90. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of

the Exchange Act, and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Groupon's business.

91.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

92.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and were traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Groupon's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of Groupon's securities would be based on truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

93.     The Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Groupon's publicly traded

securities by disseminating materially false and misleading statements and/or concealing material adverse facts.

**B.      SUBSTANTIVE ALLEGATIONS**

    **i.      False and Misleading Statements**

94.      The Class Period commences on November 4, 2011, when Groupon offered its IPO to the public.

95.      On June 2, 2011, Groupon filed a Form S-1 Registration Statement with the SEC in connection with its initial public offering. The SEC declared the Registration Statement effective on November 3, 2011.

96.      On November 3, 2011, Groupon filed a Form S-1/A Registration Statement with the SEC to facilitate its public offering of 35 million shares of Groupon common stock.

97.      The Registration Statement set forth the Company's accounting policy for recognition of refunds on coupons as follows:

> At the time revenue is recorded, we record an allowance for estimated customer refunds primarily based on historical experience. We accrue costs associated with refunds in accrued expenses on the consolidated balance sheets. The cost of refunds where the amount payable to the merchant is recoverable is recoded in the consolidated statements of operations as a reduction to revenue. The cost of refunds under the Groupon Promise, when there is no amount recoverable from the merchant, are presented as a cost of revenue. To the extent the refund is provided to a subscriber, we record the expense within selling general and administrative expense in the consolidated statements of operations. If our judgments regarding estimated customer refunds are inaccurate, reported results of operations could differ from the amount we previously accrued.

98.      The Company recognized the significance of accurately evaluating refunds when it highlighted an increasing rate of refunds resulting from the offerings of higher priced items (referred to as the "deal mix"):

> Our revenue for the third quarter of 2011 increased 426% year-over-year to $430.2 million from $81.8 million in the third quarter of 2010. On a sequential

quarterly basis, our revenue increased 9.6% from $392.6 million in the second quarter of 2011 to $430.2 million in the third quarter of 2011. We retained less of the gross paid by our customers on a percentage basis in the third quarter of 2011 compared with the second quarter of 2011. This was the result of a change in the deal mix within the quarter.

99.     These statements deceived investors into believing that Groupon had sufficient internal controls for evaluating likely rates for refunds. The failure to reveal weaknesses in the internal controls over its financial statements made the Registration Statement false and misleading.

100.     On February 8, 2012, Groupon issued a press release signed by Defendant Child revealing its fourth quarter and full year 2011 financial results for the period ending December 31, 2011. The company filed a Form 8-K incorporating the press release with the SEC on the same day.

101.     The February 8, 2012, press release reported a net loss of $9.8 million. The Company accredited the loss to "$34.8 million of tax expense, an effective tax rate of approximately 1,600%, related to profitability in certain international countries as well as additional income tax provisions related to the establishment of the company's international headquarters in Switzerland. This resulted in an unusually high effective tax rate as compared to the company's current average statutory rate of approximately 33%."

102.     On this news, Groupon's stock declined to $21.17 per share, but continued to trade at artificially inflated levels as defendants concealed Groupon's improper accounting and overstated revenues.

103.     This press release was false and misleading in that it understated operating expenses, reserves, and costs of revenue; overstated revenues, operating income and earnings per share; and failed to disclose material weaknesses in Groupon's internal controls.

ii.     **The Truth Comes To Light**

104.    Then, on March 30, 2012, after the market closed, Groupon issued a press release announcing a revision to its fourth quarter and full year 2011 results. The Company reported a reduction in its fourth quarter 2011 revenue of $14.3 million after initially reporting sales of 506.5 million. This resulted in an increase to Groupon's fourth quarter 2011 operating expenses that reduced operating income by $30 million, net income by $22.6 million, and EPS by $0.04.

105.    In the very same press release, the Company disclosed that management "concluded [that] there is a material weakness in the design and operating effectiveness of our internal control over financial reporting." Groupon stated that the "primary factors contributing to the material weakness, which relates to our financial statement close process," were:

> • We did not maintain financial close process and procedures that were adequately designed, documented and executed to support the accurate and timely reporting of our financial results. As a result, we made a number of manual post-close adjustments necessary in order to prepare the financial statements included in this Form 10-K.

> • We did not maintain effective controls to provide reasonable assurance that accounts were complete and accurate and agreed to detailed support, and that account reconciliations were properly performed, reviewed and approved While these activities should be performed in the ordinary course of our preparing our financial statements, we instead needed to undertake significant efforts to complete reconciliations and investigate items identified in those reconciliations during the course of our financial statement audit.

> • We did not have adequate policies and procedures in place to ensure the timely, effective review of estimates, assumptions and related reconciliations and analyses, including those related to customer refund reserves. As noted previously, our original estimate disclosed on February 8 of the reserve for customer refunds proved to be inadequate after we performed additional analysis.

106.    On March 30, 2012, *CNNMoney* published an article entitled, "Groupon admits more accounting errors," which states in part:

> If you thought that going public would end Groupon's parade of financial restatements, you'd be wrong.

In a double-bomb announcement on Friday, Groupon was forced to revise its fourth-quarter income and sales lower, thanks to a higher rate of customers asking for refunds.

Groupon (GRPN) said that its fourth-quarter offerings included a growing number of more expensive deals, for which more customers tend to demand a refund. The company had to go back and retroactively beef up its reserve fund, which cut its fourth-quarter sales and widened losses.

Now, Groupon is recording a loss of $65 million on sales of $492 million, a wider loss than the $43 million loss it previously reported on sales of $507 million.

The company said it has updated its refund model and thinks the new version will be more accurate.

Adding salt to the wound, Groupon revealed that its independent auditor uttered the dreaded phrase "material weakness."

Ernst & Young's 2011 audit report found that Groupon has a deficiency in its financial statement close process, which covers the steps companies go through at the end of each quarter to ensure that all of their financial transactions have been accurately recorded and reported.

Groupon said it is working on a fix, including hiring more financial staffers and developing "formal policies" and "documented procedures."

\*\*\*\*\*

As soon as Groupon disclosed its financials in its June 2011 IPO filing, critics slammed the company for its unorthodox accounting measures. That led to several downward revisions of Groupon's financials as it adopted more conventional metrics.

Those restatements effectively cut Groupon's reported sales in half to $688 million for the first half of 2011, down from the $1.5 billion it initially claimed.

107.     Also on March 30, 2012, *The Wall Street Journal* posted an article entitled "2nd

UPDATE: Groupon Rattles Investors With Revisions," which stated in part:

Groupon Inc. (GRPN) rattled investors late Friday with a disclosure that its fourth-quarter results were worse than previously reported, as the daily coupon site was hit with more expensive customer refund requests than expected as it expands into new types of deals.

Groupon, of Chicago, said in a statement the revisions clipped $14.3 million from revenue in the quarter ended in December, reduced operating income by $30 million and aggravated its loss by four cents a share.

Groupon had previously posted $506.5 million in revenue for the period, and an adjusted loss of two cents a share. The company said at that time its operating profit was $15 million minus tax expenses.

Shares of Groupon fell nearly 6% to $17.30 in after-hours trading following the disclosure.

The company said its revisions were based on a shift in the types of deals it offered in the quarter, and the higher prices for some of those deals, "which have higher refund rates."

"It's going to definitely unsettle a lot of investors," said Ken Sena, an analyst covering Groupon for Evercore Partners, adding that the revisions "essentially wipe out their income for the quarter on a reported basis."

108. On this news, the Company's stock price plunged $3.11 per share to close at $15.28 per share on April 2, 2012, a decline of 17% on unusually high volume of 10.09 million shares.

109. As a result of Defendants' wrongful course of conduct, Groupon shareholders have lost millions of dollars in their investment in the Company.

## C. THE EXCHANGE ACT DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND OMISSIONS OF MATERIAL INFORMATION

110. The statements described above and in Defendants' class period filings with the SEC were each materially false and misleading when made. Throughout the Class Period, Defendants failed to disclose: (1) that Groupon's financial results were materially false and misleading in violation of Generally Accepted Accounting Principles ("GAAP"); (2) that Groupon's revenues were overstated in violation of GAAP; (3) that the Company failed to adequately disclose their exposure to likely rates for refunds; (4) that Groupon's business was not growing to the extent represented by defendants and was not nearly as resistant to competition as suggested by defendant; (5) that the IPO Registration Statement and Prospectus

concealed that Groupon was not in compliance with the laws and regulations of some of the countries in which it operated; (6) that the Company lacked adequate internal and financial controls; and (7) that the Company's statements regarding its business and operations were materially false and misleading, and lacked any reasonable basis when made.

111.    In addition to the false and misleading statements described in detail herein, Defendants also failed to disclose the truth regarding Groupon's financial condition. Specifically, and in addition to the other omissions described herein, Defendants failed to tell the investing public the true risks the Company faced with regard to its business operations and risk management systems, and failed to disclose that the Company was operating with inadequate internal and financial controls. As a result, Groupon's reported financial results were materially false and misleading.

### D.    UNDISCLOSED ADVERSE INFORMATION

112.    The market for Groupon's securities was an open, well-developed and efficient market at all relevant times. As a result of the materially false and misleading statements and failures to disclose described herein, Groupon's securities traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased or otherwise acquired Groupon's securities relying upon the integrity of the market price of Groupon's securities and market information related to Groupon, and have been damaged thereby.

113.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Groupon's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Such statements and omissions were materially false

and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, its business, and its operations, as alleged herein.

114. At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Groupon's business, prospects and operations.

115. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Groupon and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' false and misleading statements during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

E.    **SCIENTER ALLEGATIONS**

116. As alleged herein, the Exchange Act Defendants acted with scienter in that the Exchange Act Defendants knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

117. As set forth herein, the Exchange Act Defendants, by virtue of their receipt of information reflecting the true facts regarding Groupon, their control over, receipt and/or modification of Groupon's allegedly materially misleading statements and omissions, and/or

their positions with the Company which made them privy to confidential information concerning Groupon, actively participated in the fraudulent scheme alleged herein.

118. The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the executive personnel at the highest levels of the Company, including the Individual Defendants.

### F.     STATUTORY SAFE HARBOR

119. The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Furthermore, many of the statements pleaded herein were not identified as "forward-looking statements" when made, or indicated that actual results "could differ materially from those projected." Nor were there any meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein.

120. Defendants are liable for the forward-looking statements pleaded because, at the time each of those forward-looking statements was made, Defendants knew the forward-looking statement was false, and that the forward-looking statement was authorized and/or approved by an executive officer of Groupon who knew that such statement was false when made.

### G.     LOSS CAUSATION

121. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated the prices of Groupon's securities, which operated as a fraud or deceit upon Class Period purchasers of Groupon's securities by failing to disclose to these investors that the Company's financial results were materially misleading. When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Groupon's securities fell precipitously

as the prior inflation was eliminated from the Company's stock price. As a result of their purchases of Groupon's securities during the Class Period, Plaintiff and the other Class members suffered substantial economic losses.

122.    By failing to disclose the true state of the Company's business prospects and growth strategy, investors were not aware of the actual nature of the Company's financial status. Therefore, Defendants presented a misleading picture of Groupon's current business and future prospects. Thus, instead of truthfully disclosing during the Class Period the actual state of the Company's business operations, Defendants caused Groupon to conceal the truth.

123.    Defendants' false and misleading statements had the intended effect and caused Groupon's common stock to trade at artificially inflated levels throughout the Class Period. However, as a direct result of the disclosure of the Company's problems, Groupon's common stock price plummeted immediately following the announcement of the Company's true financial condition. This drop in price removed the inflation from the market value of Groupon's securities, causing real economic loss to investors who had purchased the Company's securities during the Class Period.

124.    The decline in the price of Groupon's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to the Company's investors and the market. The timing and magnitude of Groupon's common stock price decline negates any inference that the losses suffered by Plaintiff and the other Class members was caused by unrelated market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic losses suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Groupon's securities, and the subsequent decline in the

value of Groupon's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

### H. APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

125. At all relevant times, the market for Groupon stock was an efficient market for the following reasons, among others:

a. Groupon securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

b. As a regulated issuer, Groupon filed periodic public reports with the SEC and the NASDAQ;

c. Groupon securities were followed by securities analysts employed by major brokerage firms, which analysts wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace; and

d. Groupon regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

126. As a result, the market for Groupon securities promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in Groupon's stock price. Under these circumstances, all purchasers of Groupon securities during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

### VII. CLASS ACTION ALLEGATIONS

127. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired

Groupon securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Groupon and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

128.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States.  Throughout the Class Period, Groupon securities were actively traded on the NASDAQ (an open and efficient market) under the symbol "GRPN."  As of March 27, 2012, the Company had over 640 million Class A shares outstanding.  Record owners and the other members of the Class may be identified from records maintained by Groupon and/or its transfer agents, and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in other securities class actions.

129.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

130.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

131.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b.    whether Defendants participated in and pursued the common course of conduct complained of herein;

c.    whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period, including the Offering Documents, misrepresented material facts about the business, finances, financial condition and prospects of Groupon;

d.    whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Groupon;

e.    whether the market price of Groupon common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.    the extent to which the members of the Class have sustained damages and the proper measure of damages.

132.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## VIII.  COUNTS AGAINST DEFENDANTS UNDER THE EXCHANGE ACT

### COUNT IV
**For Violations Of §10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants**

133.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein. This claim is asserted against the Exchange Act Defendants.

134.    During the Class Period, Groupon and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Groupon common stock; and (iii) cause Plaintiff and the other members of the Class to purchase Groupon stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

135.    These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Groupon securities in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. The Exchange Act Defendants are sued as primary participants in the wrongful and illegal conduct charged herein. The Individual Defendants are also sued herein as controlling persons of Groupon, as alleged herein.

136.    In addition to the duties of full disclosure imposed on the Exchange Act Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly-traded securities would be based on truthful, complete and accurate information.

137.    Groupon and the Individual Defendants, individually and in concert, directly and indirectly, by the use of the means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Groupon as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Groupon's value,  performance, and substantial growth prospects, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Groupon and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Groupon's securities during the Class Period.

138.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his or her responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

139.    These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Groupon's operating condition, business practices and future business prospects from the investing public, and to continue supporting the artificially inflated price of its stock. As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

140.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Groupon securities was artificially inflated during the Class Period. In ignorance of the fact that the market price of Groupon shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Exchange Act Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Exchange Act Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Groupon securities during the Class Period at artificially inflated prices and were damaged thereby.

141.    At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Groupon, which were not disclosed by the Exchange Act Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired Groupon securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

142.    By virtue of the foregoing, Groupon and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

143.     As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**COUNT V**
**For Violations of §20(a) of the Exchange Act**
**Against the Individual Defendants**

144.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. This claim is asserted against the Individual Defendants.

145.     The Individual Defendants were and acted as controlling persons of Groupon within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause these statements to be corrected.

146.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

147.     As set forth above, Groupon and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.   By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.   As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

a)     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)     Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c)     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)     Awarding such other relief as this Court deems appropriate.

## X.     JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 27, 2012

**LASKY & RIFKIND, LTD.**
Leigh Lasky
Norman Rifkind
Amelia S. Newton
Heidi VonderHeide

s/  Norman Rifkind
351 W. Hubbard Street
Suite 401
Chicago, IL 60654
Tel: (312) 634-0057
Fax: (312) 634-0059

**SAXENA WHITE P.A.**
Joseph E. White III
Christopher S. Jones
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

**EMERSON POYNTER LLP**
Scott E. Poynter
The Museum Center
500 President Clinton Ave., Suite 305
Little Rock, AR 72201
Phone:  (501) 907-2555
Fax: (501) 907-2556

**EMERSON POYNTER LLP**
John G. Emerson
830 Apollo Lane
Houston, TX
Phone:  (281) 488-8854
Fax:  (281) 488-8867

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, John H. Cottrell ("Plaintiff"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed a copy of the complaint alleging securities fraud against Groupon, Inc. and other related defendants and has authorized its filing.

2.  Plaintiff did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff's transactions in Groupon, Inc. common stock are set forth below:

| Transaction | Quantity | Trade Date | Price ($) |
|---|---|---|---|
| Purchase | 400 shares | November 4, 2011 | $28.00 |
| Sale | 400 shares | November 23, 2011 | $17.5124 |

5.  Plaintiff has not sought to serve nor has served as a representative party for a class in any action(s) filed under the federal securities laws during the three years prior to the date of this Certificate.

6.  Plaintiff will not accept any payment for serving as a lead plaintiff and/or representative party on behalf of the Class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this _27th_ day of April 2012.

John H. Cottrell